IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TONY LORD,                          *          CIVIL ACTION NO.
                                    *          3:13-CV-0022-CAR-CHW
        Petitioner,                 *
                                    *          HABEAS CORPUS
vs.                                 *          28 U.S.C. § 2254
                                    *
FRED HEAD, WARDEN,                  *
                                    *
        Respondent.                 *

BRIEF IN SUPPORT OF ANSWER-RESPONSE

I.  PROCEDURAL HISTORY

On August 31, 2006, the Oconee County grand jury indicted Petitioner for

aggravated battery (family violence), two counts of aggravated assault (family

violence), and family violence battery.  (Respondent's Exhibit[1] 7, pp. 82).  On

March 9, 2007, a jury found Petitioner guilty of two counts of aggravated assault

(family violence).  (Resp. Ex. 7, p. 175).  Petitioner received a sentence of fifteen

years to serve on one count and a "split" sentence of twenty years, eight to serve

and the balance probated, consecutive, for the second count.  Resp. Ex. 7, p. 174).

Petitioner's convictions were affirmed on direct appeal on March 26, 2009.

Lord v. State, 297 Ga. App. 88, 676 S.E.2d 404 (2009).

---

[1] Respondent's exhibits will hereinafter be referred to as "Resp. Ex." followed by
the exhibit number and page number(s).

Petitioner filed a state habeas corpus petition, alleging twelve grounds, on March 15, 2010, in Telfair County.  (Resp. Ex. 1).  The petition was subsequently transferred to Hancock County, and Petitioner amended to add four additional grounds.  (Resp. Exs. 2-3).  An evidentiary hearing was held on August 18, 2010.  (Resp. Exs. 7-10).  Relief was denied by final order filed June 7, 2012.  (Resp. Ex. 4).  Petitioner filed an application for a certificate of probable cause to appeal, which was denied on January 22, 2013.

Petitioner executed this federal habeas corpus petition on February 12, 2013, and Petitioner filed an amendment on March 18, 2013.  (Doc. 6).

## II. <u>FINDINGS OF FACT</u>

The Georgia Court of Appeals summarized the facts supporting Petitioner's conviction as follows:

> On August 4, 2006, an Athens-Clarke County police officer was dispatched to meet James Kellough, who had placed a 911 call at 4:46 a.m. reporting a battery. A frantic and somewhat intoxicated Kellough told the officer that he had witnessed his friend, Tony Lord, brutally beat Carmen Agarenzo, Lord's live-in girlfriend, and that he was afraid Lord would kill her. Kellough told the officer that Lord had asked him to go with him to the Polo Club Apartments to retrieve Agarenzo, who had gotten separated from Lord earlier that morning while they were out drinking. They picked up Agarenzo, who got in the passenger side of the car. As Lord drove away from the apartments, he started punching Agarenzo and bashing her head into the car's dashboard, cursing her and threatening to kill her. Kellough told the officer that Agarenzo, who was bleeding heavily and fading in and out of consciousness, attempted to get out of the car while it was moving. When Lord stopped the car to pull her back inside, Kellough, who was in the back seat, got out. Lord drove away with Agarenzo,

and Kellough called the police from his cell phone.

Kellough told the officer that Lord lived in the Windy Hills subdivision in Oconee County and described Lord's car, a white Ford Taurus. The officer relayed this information to the Oconee County Sheriff's Department and asked that they check Lord's residence to see if Agarenzo was safe. Later, the officer spoke with an Oconee County sheriff's deputy. The deputy told the officer that he had responded to a burglar alarm call at Lord's residence, had met Lord, had seen the white Ford Taurus and its bloodied interior, and had witnessed Agarenzo staggering from the woods. Based on this information, the officer asked the deputy to detain Lord on a battery charge until he could get there.

Not too long after the Athens-Clarke County police began investigating Kellough's 911 call, the Oconee County Sheriff's Department sent deputies to Lord's residence in response to a burglar alarm. At about 5:36 a.m., as the Oconee County deputies were arriving at Lord's house, they received additional information from dispatch that Clarke County had requested a "welfare check" on Agarenzo. As the deputies walked up to Lord's house, they could see Lord standing in his doorway and could hear him talking on the cell phone with someone about his burglar alarm. Lord appeared disheveled and had a strange "wild-eyed" demeanor. A deputy asked Lord where Agarenzo was, and Lord said she was in Athens with another man. The deputies asked if they could search the house for Agarenzo, and Lord consented.

As one deputy stood in the kitchen with Lord, another walked through the house toward the bedroom, doing a brief two-minute "sweep" of the house. In the bedroom, the deputy saw a pornographic video playing on the television and a bloody, face-shaped imprint on the upper left-hand corner of a bed sheet. As the deputy came back down the hallway toward the kitchen, a third deputy stepped inside and informed the others that he could see, in plain view, blood splatter and clumps of long, blond hair inside the white, Ford Taurus parked outside. The deputies stepped outside with Lord and observed the condition of the car without opening it. Around the time the deputy announced seeing blood inside Lord's car, Lord withdrew his consent to search his home.

3

The deputies, concerned that Agarenzo had been the victim of an attack by Lord, handcuffed Lord and placed him in the back of a patrol car. One of the deputies radioed the Athens-Clarke County officer who had asked for the welfare check and learned that Lord had allegedly beaten his girlfriend in the car while they were in Clarke County and that the officer wanted Lord detained on suspicion of battery. While Lord was inside the patrol car, Agarenzo emerged from the woods near the house. She was bloody, disoriented, and crying. One of her eyes was bulging, as if it had been damaged. She could barely speak. When the deputies asked her if Lord had done this to her, she nodded "yes." The deputies called for an ambulance, and the responding paramedics took Agarenzo to the hospital.

The Athens-Clarke County officer arrived at Lord's residence shortly after Agarenzo had been transported to the hospital. He arrested Lord for battery. He met with the deputies and then photographed Lord's car. The officer went inside the house, at the request of the Oconee County deputies, to look at some bloody clothing that Lord was suspected of wearing earlier that evening. The officer observed blood droplets and splatter inside the house and saw what appeared to him to be a bloody faceprint on Lord's bed sheet. The officer took 14 photographs, identified as State's Exhibits 1-14, most of which were of the car. Although the officer did not touch anything inside the car, he opened the car doors to facilitate taking pictures of the blood splatter in State's Exhibits 7-11 and 13. The officer also took three pictures of Lord's bedroom and one of the bathroom. He did not move or touch anything inside the house as the Oconee County deputies were securing Lord's home as a crime scene.

An Oconee County detective also took photographs of Lord's car and home when he arrived. These photographs, identified as State's Exhibits 19-33, were of the interior and exterior of Lord's car and the interior of Lord's residence. The detective testified that he opened the car door and moved the passenger side visor to facilitate photographing the blood inside the car. Inside the home, the detective did not open any drawers or move anything, but, instead, documented the evidence he saw in plain view. After the car was photographed, it was impounded and towed to the Athens-Clarke County police

department.

While the deputies were securing Lord's residence, a domestic violence detective with the Athens-Clarke County police department interviewed Agarenzo at the hospital. The detective observed that Agarenzo had extensive injuries to her face, lips, throat, forehead, arms, and legs. Agarenzo told the detective that Lord beat her in the car, that he punched her, choked her, and threatened to kill her. And when they got home, he continued beating her and choking her. She ran to the bathroom, trying to escape Lord, but he grabbed her, choked her, punched her ear, and banged her head against the toilet and bathroom counter. At some point during the assault, Lord bit Agarenzo's arms and legs. Lord also shoved a curling iron down Agarenzo's throat, which resulted in a severe injury to her hyperpharynx. The Athens-Clarke County detective met with an Oconee County special victims investigator while at the hospital. They shared the information obtained from Agarenzo with each other and with their fellow officers. The Athens-Clarke County detective obtained a search warrant for Lord's car, and the Oconee County investigator obtained a search warrant for Lord's residence.

The affidavit supporting the Oconee County application for a search warrant of Lord's residence was based on the following information: the eyewitness report of a battery against Agarenzo in Clarke County, Lord's disheveled appearance when confronted in Oconee County, his denial that a domestic argument had occurred, the presence of a large quantity of blood in the car, Agarenzo's physical injuries, Agarenzo's statement that she had been assaulted in both Clarke County and Oconee County, Agarenzo's statement that Lord had shoved a curling iron down her throat, and the presence of blood splatter observed inside the house. The Oconee County investigator obtained the signed search warrant at 4:20 p.m. the day of the assault. That afternoon, a Georgia Bureau of Investigation (GBI) crime scene analyst arrived at Lord's residence to execute the search warrant. When he arrived, the officers were outside of Lord's home, not in it, waiting to begin the search. Pursuant to the search warrant, the GBI recovered evidence from Lord's kitchen, living room, master bedroom, and master bathroom, including numerous blood swabs, bloodied clothing and wash towels, a broken necklace, a broken candle holder, a broken belt

buckle and a bloodied belt, a blood-stained bed sheet, and the bloodied curling iron.

Lord, 297 Ga. App. at 88-91(1).  Those facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).

### III.   ARGUMENT AND CITATION OF AUTHORITY

### A. PETITIONER RECEIVED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
(Part of Ground 2)

In part of ground 2, Petitioner alleges he received ineffective assistance of counsel, in that Petitioner's appellate counsel did not raise on appeal (a) the alleged ineffective assistance of trial counsel for not moving for a "directed verdict of acquittal with respect to count two of the indictment," in that that "counts one and two do not allege every essential element of the crime charged"' and, (b) the alleged ineffective assistance of trial counsel for not objecting to the admission statements made by Petitioner's wife, who had invoked the marital privilege, as violating Petitioner's right to confrontation pursuant to Crawford v. Washington, 541 U.S. 36 (2004).

These issues were decided on the merits adversely to Petitioner in the state courts.  Respondent urges the Court to defer under 28 U.S.C. § 2254(d) to the state courts' merits decisions on these issues.

The Standard of Deference

Since Petitioner filed this petition after the April 24, 1996, effective date of

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the

threshold question is whether the Georgia courts' merits adjudications of the

claims, listed above, warrant deference under 28 U.S.C. § 2254(d).  Renico v. Lett,

___ U.S. ___, 130 S.Ct. 1855, 1862 (2010).

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceedings.

This provision "places a new constraint on the power of a federal habeas

court to grant a state prisoner's application for a writ of habeas corpus with respect

to claims adjudicated on the merits in state court."  Williams v. Taylor, 529 U.S.

362, 412 (2000).  This standard "forecloses relief unless" the state court's merits

adjudication of the constitutional claim is either contrary to, or an unreasonable

application of, clearly established United States Supreme Court precedent or is an

unreasonable determination of the facts.  Early v. Packer, 537 U.S. 3, 7 (2002).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412; Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

> With one caveat, whatever would qualify as an old rule under our Teague[2] jurisprudence will constitute "clearly established Federal law, as determined by the Supreme Court of the United States under § 2254(d)((1). [Cit.] The one caveat, as the statutory language makes clear, is that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.

Williams, 529 U.S. at 412. "A federal court of appeals decision, even one with a holding directly on point, does not clearly establish federal law for § 2254(d)(1) purposes." Allen v. Sec'y, Dep't of Corr., 611 F.3d 740, 764 (11th Cir. 2010).

A state court decision is "contrary to" Supreme Court precedent if a state court applies a test that contradicts the governing one, such as applying a different analysis under the "actual prejudice" prong of Strickland v. Washington, 466 U.S. 668 (1984), or a state court reaches a different result on a substantially similar set of facts. Early v. Packer, 537 U.S. at 9; Williams, 529 U.S. at 405-06. This requirement does not mean that the state court must expressly cite the governing Supreme Court standards, just that "neither the reasoning nor the result of the state-court decision contradicts them." Early, 537 U.S. at 8.

---

[2] Teague v. Lane, 489 U.S. 288 (1989).

"Where, as here, the state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).  The standard "objectively unreasonable" is "a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007).  See also Johnson v. Upton, 615 F.3d 1318, 2010 U.S. App. LEXIS 17606 at *25 (11th Cir. 2010); Suggs v. McNeil, 609 F.3d 1218, 1227 (11th Cir. 2010).

Further, "the range of reasonable judgment can depend in part on the nature of the rule." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Evaluating whether the state court's application of a clearly established rule was unreasonable turns on how specific the rule may be, as, "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Id.  A federal court may not simply substitute its judgment for that of the state court. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'  § 2254(e)(1)."  Schriro, 550 U.S. at 473-74.

<div align="center">The State Courts' Decisions</div>

In part of ground 2 of the petition, Petitioner alleges his appellate counsel was ineffective for not moving for a directed verdict because the indictment did not

alleged all of the essential elements of the charged crimes and for not objecting to the admission statements made by Petitioner's wife, who had invoked the marital privilege, as violating Petitioner's right to confrontation.  Petitioner raised these allegations of ineffective assistance of appellate counsel in his state habeas corpus petition as amended.  Specifically, in amended ground 14 Petitioner claimed his trial counsel was ineffective for not moving for a directed verdict, in amended ground 15 Petitioner claimed his trial counsel was ineffective for not the alleged Crawford violation, and in amended ground 16 Petitioner claimed his appellate counsel was ineffective for not raising the issues in amended grounds 14 and 15. (Resp. Ex. 3, pp. 12-17, 17-21, 21-26).  The state habeas court, citing and following the two-prong test established in Strickland v. Washington, held that Petitioner failed to meet his burden to establish that he received ineffective assistance of appellate counsel.  (Resp. Ex. 4, pp. 7-17).  Petitioner fails to demonstrate that the state habeas corpus court's decision was an unreasonable determination of facts or application of law.  To the contrary, the state habeas court followed the two-pronged standard set forth in Strickland.  Therefore, Respondent submits that the state court's decision on this issue is entitled to deference.

Accordingly, Respondent urges the Court t deny relief on these claims.

### B. PETITIONER'S FOURTH AMENDMENT CLAIMS IN GROUNDS 3 AND 4 ARE PRECLUDED FROM REVIEW
(Parts of Grounds 3 and 4).

In part of ground 3 of this petition, Petitioner claims "law enforcement officials entered Petitioner's residence without valid consent or search warrant, and seized alleged evidence of violations of state criminal statute," in violation of the fourth amendment.  In part of ground 4 of this petition, Petitioner claims "law enforcement officials seized and entered Petitioner's vehicle, without prior consent or a valid search warrant, and obtained alleged evidence of violations of state criminal statute," in violation of the fourth amendment.  Respondent submits the appellate court considered these claims under the correct constitutional standard, decided the claims adversely to Petitioner, and this Court should find that the fourth amendment claims are precluded from review under Stone v. Powell, 428 U.S. 465 (1976).

Petitioner raised these issues on direct appeal.  (Resp. Ex. 10, pp. 1967-84). The Court of Appeals found that Petitioner's motion to suppress was properly denied on both issues.  Lord, 297 Ga. App. at 91-94(1).   The holding in Stone precludes federal courts evaluating fourth amendment claims in § 2254 petitions from further consideration of those grounds on the merits.  As such, this Court should decline to review of the fourth amendment claims in ground two, and ground two does not provide a basis for relief.

C.   GROUND 1 AND PARTS OF GROUNDS 2, 3, AND 4 ARE
        PROCEDURALLY DEFAULTED

In ground 1, parts of grounds 2, 3, and 4, and ground 5, Petitioner asserts

claims that are defaulted.  Either the state habeas corpus court found the claims to

be defaulted, as they were not raised at trial and on direct appeal, or they are

defaulted under Georgia's successive petition rule since they were not, but could

reasonably have been raised, in Petitioner's state collateral attack.

Parts 2 and 3 of Ground 1

As the Court is aware, Georgia's habeas corpus statute was amended in 1982

to create, in effect, both a contemporaneous objection rule for trial and an

abandoned objection rule for direct appeal.  O.C.G.A. § 9-14-48(d) was amended

to require that, in order to preserve issues for review on the merits in subsequent

collateral attacks, the issue complained of must be both timely raised at trial under

the relevant procedural requirement and pursued as error on direct appeal.

Black v. Hardin, 255 Ga. 239, 336 S.E.2d 754 (1985).  The Supreme Court has

made it "explicit" that:

> In all cases in which a state prisoner has defaulted his federal claims
> in state court pursuant to an independent and adequate state
> procedural rule, federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage
> of justice.

Coleman, 501 U.S. at 750.

Here, in parts 2 and 3 of Ground 1 of the petition, Petitioner claims he received ineffective assistance of counsel, in that Petitioner's trial counsel did not "move the court by motion for a directed verdict of acquittal with respect to count two of the indictment," in that that "counts one and two do not allege every essential element of the crime charged"' and, did not object to the admission statements made by Petitioner's wife, who had invoked the marital privilege as violating Petitioner's right to confrontation pursuant to <u>Crawford</u>, 541 U.S.. Petitioner did not raise these issues at trial and on direct appeal. Petitioner raised these issues for the first time in amended grounds 14 and 15 of his state habeas petition. (Resp. Ex. 3, pp. 12-20). The state habeas court found that the claims were defaulted under O.C.G.A. § 9-14-48(d) and Petitioner failed to establish cause and prejudice as defined under state law to excuse the default. (Resp. Ex. 4, pp. 5-7).

Because Petitioner's claims were not raised at trial and on direct appeal so that the issues were found to be defaulted in Petitioner's state habeas corpus proceeding, Respondent submits that the issues are barred from review in this Court unless Petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Petitioner has not established cause, in the form of appellate counsel ineffectiveness, and actual prejudice as defined in <u>Murray v. Carrier</u>, 477 U.S. 478 (1986), and <u>Wainwright v. Sykes</u>, 433 U.S. 78 (1983), to overcome the default. Petitioner alleges in ground 2 that his appellate counsel was ineffective for not raising these issues on direct appeal.  As addressed above, Petitioner raised this claim in his state petition, and the state court found that Petitioner failed to demonstrate that he received ineffective assistance of appellate counsel, and that decision is entitled to deference.

In sum, these claims were found by the state habeas court to be defaulted. Respondent urges the Court to defer to those findings, decline to review the merits and deny relief.

<u>Parts of Grounds 1, 2, 3, and 4 Are New But Procedurally Defaulted</u>

The remaining claims in parts of grounds 1, 2, 3, and 4 new but procedurally defaulted under Georgia's successive petition rule, O.C.G.A. § 9-14-51, as these issues were not raised in Petitioner's state habeas corpus case, and it is clear the state courts would find the claims to be successive if now raised in a second state collateral attack.  <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1327 (11th Cir. 1998). Respondent further submits that Petitioner cannot establish cause and actual prejudice to overcome the default.

This Court is familiar with Georgia's successive petition rule for habeas corpus cases, which provides:

> All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition.  Any grounds not so raised are waived unless the constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

O.C.G.A. § 9-14-51.

The purpose of this successive provision is to discontinue the practice of filing multiple petitions challenging a single judgment of conviction.  Hunter v. Brown, 236 Ga. 168, 223 S.E.2d 145 (1976).  When faced with a second or subsequent petition, a state reviewing court must determine as a threshold matter whether any new claims raised by a petitioner could reasonably have been raised in his prior habeas corpus case or are constitutionally nonwaivable.  Smith v. Zant, 250 Ga. 645, 301 S.E.2d 32 (1983).  The Georgia Supreme Court looks to the facts and circumstances of the individual case to make that determination.  Tucker v. Kemp, 256 Ga. 571, 575, 351 S.E.2d 196 (1987).

The exhaustion requirement of 28 U.S.C. § 2254(b) and (c) ordinarily requires that grounds for relief be "fairly presented" to the state courts to give the state a chance to rule on the issue.  Duncan v. Henry, 513 U.S. 364 (1995).

> But, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural

> default, we can forego the needless "judicial ping-pong" and just treat those claims now barred by state law as no basis for federal habeas relief.

Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); Baldwin v. Johnson, 152 F.3d 1304, 1311 (11th Cir. 1998).  The rule that a state court's judgment must clearly and expressly say it is resting on a state procedural bar in order to bar review in federal court simply has no application where the claim is new and has never been presented to the state court.  Teague v. Lane, 489 U.S. 288, 299 (1989).

The Eleventh Circuit has held that Georgia's successive petition rule:

> [S]hould be enforced in federal habeas proceedings against claims never presented in state court, unless there is some indication that a state court judge would find the claims in question "could not reasonably have been raised in the original or amended [state habeas] petition."

Chambers, 150 F .3d at 1327 (quoting O.C.G.A. § 9-14-51).

In part 1 of ground 1, Petitioner claims his trial counsel was ineffective for not filing a general demurrer to counts one and two of the indictment.  Petitioner did not raise this issue on appeal or in his state habeas corpus petition.  In amended ground 13 of his state habeas corpus petition, Petitioner alleged that his trial counsel was ineffective for not challenging the indictment by way of a motion in arrest of judgment, and in amended ground 14 he alleged his trial counsel was ineffective for not moving for a directed verdict; but, Petitioner did not allege, as

he does here, that his counsel was ineffective for not challenging the indictment by way of a general demurrer.   (Resp. Ex. 3).

In part of ground 2, Petitioner claims his appellate counsel was ineffective for not raising on appeal the ineffective assistance of trial counsel alleged in ground 1.  Petitioner did not raise this issue in his state habeas corpus petition.  In amended ground 16 of his state petition Petitioner alleged his appellate counsel was ineffective for not raising the issues of ineffective assistance of counsel raised in amended grounds 13, 14, and 15 of the state petition; but, amended grounds 13, 14, and 15 of the state petition did not allege Petitioner's trial counsel was ineffective for not challenging the indictment by way of a general demurrer. (Resp. Ex. 3).

In parts of grounds 3 and 4, Petitioner alleges fifth amendment due process and equal protection violations resulting from searches of his residence and vehicle.  On direct appeal Petitioner challenged the searches of his residence and vehicle as fourth amendment violations, but Petitioner did not challenge the searches as fifth amendment violations.  (Resp. Ex. 10, pp. 1967-84).  Similarly, Petitioner did not raise these alleged fifth amendment violations in his state habeas corpus petition.

Accordingly, these claims in parts of grounds 1, 2, 3, and 4 are new and therefore procedurally defaulted, as the issues would clearly be held to be successive if raised in a subsequent state habeas corpus petition.

Petitioner has not established cause to overcome the default of these claims. The default occurred when Petitioner failed to raise the issues in his initial state collateral attack, and Petitioner fails to suggest any reason why these issues could not "reasonably" have been raised in the original petition.  O.C.G.A. § 9-14-51. Because Petitioner has not shown "cause," this Court need not inquire into actual prejudice.  Smith v. Murray, 477 U.S. 527, 533 (1986).  Nevertheless, Petitioner also fails to demonstrate actual prejudice.  Petitioner cannot show prejudice as to the fifth amendment claims in grounds 3 and 4, as these claims fail to state a claim for relief in habeas corpus, as Petitioner does not allege a violation of a federal constitutional right or "clearly established Federal law" within the meaning of 28 U.S.C. § 2254, and/or is barred by Teague, 489 U.S. 288.  Therefore, Respondent submits that these issues are defaulted and fail to provide a basis for relief.

D. GROUND FIVE FAILS TO PROVIDE A BASIS FOR RELIEF

In ground 5 of the petition, Petitioner alleges he was denied equal protection and due process under the fourth, fifth, and fourteenth amendments, in that "the Georgia Court of Appeals disregarded the jury's verdict of 'Not Guilty' as to Count One of the indictment and misapplied alleged facts and evidence to support

a finding that the trial court did not err in denying Petitioner's motion to suppress evidence seized from his residence and vehicle, or in concluding that the offenses did not merge."  Construed liberally, Respondent understands Petitioner to be alleging that the trial court erred in denying his motion to suppress and that his convictions should have merged, and that the Court of Appeals' rulings on these issues are not entitled to deference.

Regarding the motion to suppress, as noted above the fourth amendment claim was raised on direct appeal, and Stone v. Powell precludes further consideration of those grounds on the merits.  In as much as Petitioner alleges the searches amounted to fifth amendment due process and equal protection violations, these claims are new but procedurally defaulted, and further are Teague barred.

Regarding the issue of whether Petitioner's convictions should have merged, Petitioner raised this issue on direct appeal as an issue of state law and also as a fifth amendment double jeopardy violation.[3]  (Resp. Ex. 10, 1984-89).  The Court of Appeals held that the jury was authorized to find that Petitioner committed two distinct aggravated assaults, in that:

> the jury was authorized to infer that, at one point during the struggle inside the house, [Petitioner] choked [the victim] with both hands (leaving parallel injuries) and that he did it violently enough to rupture

_____

[3] As violations of state law do not state cognizable claims in federal habeas, Petitioner appropriately does not raise the issue under state law here.

blood vessels on her face and neck and to render her unconscious. His hands, under the circumstances, were deadly weapons as they were used in a manner likely to, and which did, cause serious bodily injury. [Cit.]  The jury could also infer that on a separate occasion, [Petitioner] grabbed a curling iron and jammed it down [the victim's] throat hard enough to lacerate it. Given [Petitioner's] threats to kill [the victim], the extremely violent and prolonged nature of the abuse, the use of a blunt metal instrument, and the especially deadly nature of this injury, the jury could infer an attempt to murder.

Lord, 297 Ga. App. At 95(2).  Georgia's standard for determining whether a crime is included in another is the standard provided consistent with established federal law.  Under O.C.G.A. § 16-1-6 (1), a crime is included in the other where it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the other crime.  Drinkard v. Walker, 281 Ga. 211, 213, 636 S.E.2d 530 (2006) (internal punctuation omitted). In Drinkard, the Georgia Supreme Court adopted the "required evidence" test of Blockburger v. United States, 284 U.S. 299 (1932), which holds that "the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  Id. at 215.  Petitioner fails to demonstrate that the state court's decision is not entitled to deference under 28 U.S.C. § 2254(d).  Renico, 130 S.Ct. 1855, 1862.  In as much as Petitioner alleges the failure to merge

amounted to fifth amendment due process and equal protection violations, these claims are new but procedurally defaulted, and further are <u>Teague</u> barred.

Finally, in as much as Petitioner is alleging not that the Court of Appeals's decision is not entitled to deference, but rather that the court improperly handled the case by not properly considering the record before it, this claim is both new but procedurally defaulted and fails to state a claim for relief and/or is <u>Teague</u> barred.

## CONCLUSION

WHEREFORE, Respondent prays that this Court deny habeas corpus relief.

Respectfully submitted,

SAMUEL S. OLENS                551540
Attorney General

BETH A. BURTON                027500
Deputy Attorney General

s/Paula K. Smith_____
PAULA K. SMITH                662160
Senior Assistant Attorney General

s/David A. Zisook_____
DAVID A. ZISOOK                310104
Assistant Attorney General

Please serve:

DAVID A. ZISOOK
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S. W.
Atlanta, Georgia  30334-1300
Telephone: (404) 463-8636

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day served the within and foregoing

BRIEF, prior to filing the same, by depositing a copy thereof, postage prepaid, in

the United States Mail, properly addressed upon:

> Tony Lord
> GDC-1254418
> Riverbend Correctional Facility
> 196 Laying Farm Rd.
> Milledgeville, GA 31061

This  <u>9th</u>  day of May, 2013.

<div style="margin-left: 40%;">

<u>s/David A. Zisook</u>_____
DAVID A. ZISOOK
Assistant Attorney General

</div>