IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| TONY LORD, | : | |
|     Petitioner, | : | |
| | : | |
| v. | : | Case No. 3:13-cv-22 (CAR) |
| | : | |
| Warden FRED HEAD *et al.*, | : | Proceedings Under 28 U.S.C. § 2254 |
|     Respondents. | : | Before the U.S. Magistrate Judge |
| _____ | : | |

**RECOMMENDATION**

Before the Court is Petitioner Tony Lord's 28 U.S.C. § 2254 original and amended petitions seeking federal habeas corpus relief. Docs. 1, 6. Because all of the grounds identified by Petitioner either fail to state a claim or are procedurally defaulted, it is hereby **RECOMMENDED** that the petition be **DENIED**.

PROCEDURAL BACKGROUND

On August 31, 2006, a grand jury in the Superior Court of Oconee County indicted Petitioner for one count of aggravated battery (family violence) and two counts of aggravated assault (family violence). Doc. 11-7 at 107-108. Following a trial, a jury in the Superior Court of Oconee County found Petitioner guilty of two counts of aggravated assault on March 9, 2007. Id. at 177. The Superior Court of Oconee County sentenced Petitioner to fifteen years imprisonment on the one count and twenty consecutive years on the other count with only eight of the twenty consecutive years to be served in confinement, for a total term of imprisonment of twenty-three years on both counts. Id. at 176.

On March 26, 2009, the Georgia Court of Appeals unanimously affirmed Petitioner's convictions on direct appeal. Lord v. State, 297 Ga. App. 88 (2009). More specifically, the Georgia Court of Appeals held that the trial court did not err in denying Petitioner's motion to

suppress the evidence seized from his residence and his vehicle. Id. at 88-94. The Georgia Court of Appeals also held that the trial court did not err in refusing to merge Petitioner's two convictions for aggravated assault because the record supported a finding that the assaults were predicated upon and supported by evidence of two separate crimes occurring independently of each other. Id. at 94-96. Petitioner failed to file a motion for reconsideration or a notice of intent to apply for certiorari with the Georgia Supreme Court.

On March 15, 2010, Petitioner filed his original state habeas corpus petition in the Superior Court of Telfair County. Doc. 11-1. The Superior Court of Telfair County subsequently transferred Petitioner's original state habeas petition to the Superior Court of Hancock County. Doc. 11-2. After the transfer, Petitioner filed his amended state habeas petition. Doc. 11-3. Following an evidentiary hearing, the Superior Court of Hancock County entered a final order denying Petitioner's state habeas petition on June 7, 2012. Doc. 11-4. On January 22, 2013, the Georgia Supreme Court unanimously denied Petitioner's application for certificate of probable cause to appeal the denial of his state habeas petition. Doc. 11-6.

On February 22, 2013, Petitioner filed his original federal habeas corpus petition. Doc. 1. Petitioner timely filed his amended federal habeas petition on March 18, 2013. Doc. 6. Respondents filed an answer and brief in support thereof. Docs. 7, 8. Respondents also filed an unopposed motion to intervene, which the Court granted on May 10, 2013. Docs. 9, 10.

STATEMENT OF FACTS

In accordance with 28 U.S.C. § 2254(e)(1), and for purposes of considering this petition, the facts as found by the Georgia Court of Appeals on direct appeal of Petitioner's convictions are adopted by the Court. These facts are as follows:

> On August 4, 2006, an Athens–Clarke County police officer was dispatched to meet James Kellough, who had placed a 911 call at 4:46 a.m. reporting a battery.

A frantic and somewhat intoxicated Kellough told the officer that he had witnessed his friend, Tony Lord, brutally beat Carmen Agarenzo, Lord's live-in girlfriend, and that he was afraid Lord would kill her. Kellough told the officer that Lord had asked him to go with him to the Polo Club Apartments to retrieve Agarenzo, who had gotten separated from Lord earlier that morning while they were out drinking. They picked up Agarenzo, who got in the passenger side of the car. As Lord drove away from the apartments, he started punching Agarenzo and bashing her head into the car's dashboard, cursing her and threatening to kill her. Kellough told the officer that Agarenzo, who was bleeding heavily and fading in and out of consciousness, attempted to get out of the car while it was moving. When Lord stopped the car to pull her back inside, Kellough, who was in the back seat, got out. Lord drove away with Agarenzo, and Kellough called the police from his cell phone.

Kellough told the officer that Lord lived in the Windy Hills subdivision in Oconee County and described Lord's car, a white Ford Taurus. The officer relayed this information to the Oconee County Sheriff's Department and asked that they check Lord's residence to see if Agarenzo was safe. Later, the officer spoke with an Oconee County sheriff's deputy. The deputy told the officer that he had responded to a burglar alarm call at Lord's residence, had met Lord, had seen the white Ford Taurus and its bloodied interior, and had witnessed Agarenzo staggering from the woods. Based on this information, the officer asked the deputy to detain Lord on a battery charge until he could get there.

Not too long after the Athens–Clarke County police began investigating Kellough's 911 call, the Oconee County Sheriff's Department sent deputies to Lord's residence in response to a burglar alarm. At about 5:36 a.m., as the Oconee County deputies were arriving at Lord's house, they received additional information from dispatch that Clarke County had requested a "welfare check" on Agarenzo. As the deputies walked up to Lord's house, they could see Lord standing in his doorway and could hear him talking on the cell phone with someone about his burglar alarm. Lord appeared disheveled and had a strange "wild-eyed" demeanor. A deputy asked Lord where Agarenzo was, and Lord said she was in Athens with another man. The deputies asked if they could search the house for Agarenzo, and Lord consented.

As one deputy stood in the kitchen with Lord, another walked through the house toward the bedroom, doing a brief two-minute "sweep" of the house. In the bedroom, the deputy saw a pornographic video playing on the television and a bloody, face-shaped imprint on the upper left-hand corner of a bed sheet. As the deputy came back down the hallway toward the kitchen, a third deputy stepped inside and informed the others that he could see, in plain view, blood splatter and clumps of long, blond hair inside the white, Ford Taurus parked outside. The deputies stepped outside with Lord and observed the condition of the car without opening it. Around the time the deputy announced seeing blood inside Lord's car, Lord withdrew his consent to search his home.

3

The deputies, concerned that Agarenzo had been the victim of an attack by Lord, handcuffed Lord and placed him in the back of a patrol car. One of the deputies radioed the Athens–Clarke County officer who had asked for the welfare check and learned that Lord had allegedly beaten his girlfriend in the car while they were in Clarke County and that the officer wanted Lord detained on suspicion of battery. While Lord was inside the patrol car, Agarenzo emerged from the woods near the house. She was bloody, disoriented, and crying. One of her eyes was bulging, as if it had been damaged. She could barely speak. When the deputies asked her if Lord had done this to her, she nodded "yes." The deputies called for an ambulance, and the responding paramedics took Agarenzo to the hospital.

The Athens–Clarke County officer arrived at Lord's residence shortly after Agarenzo had been transported to the hospital. He arrested Lord for battery. He met with the deputies and then photographed Lord's car. The officer went inside the house, at the request of the Oconee County deputies, to look at some bloody clothing that Lord was suspected of wearing earlier that evening. The officer observed blood droplets and splatter inside the house and saw what appeared to him to be a bloody faceprint on Lord's bed sheet. The officer took 14 photographs, identified as State's Exhibits 1–14, most of which were of the car. Although the officer did not touch anything inside the car, he opened the car doors to facilitate taking pictures of the blood splatter in State's Exhibits 7–11 and 13. The officer also took three pictures of Lord's bedroom and one of the bathrooms. He did not move or touch anything inside the house as the Oconee County deputies were securing Lord's home as a crime scene.

An Oconee County detective also took photographs of Lord's car and home when he arrived. These photographs, identified as State's Exhibits 19–33, were of the interior and exterior of Lord's car and the interior of Lord's residence. The detective testified that he opened the car door and moved the passenger side visor to facilitate photographing the blood inside the car. Inside the home, the detective did not open any drawers or move anything, but, instead, documented the evidence he saw in plain view. After the car was photographed, it was impounded and towed to the Athens–Clarke County police department.

While the deputies were securing Lord's residence, a domestic violence detective with the Athens–Clarke County police department interviewed Agarenzo at the hospital. The detective observed that Agarenzo had extensive injuries to her face, lips, throat, forehead, arms, and legs. Agarenzo told the detective that Lord beat her in the car, that he punched her, choked her, and threatened to kill her. And when they got home, he continued beating her and choking her. She ran to the bathroom, trying to escape Lord, but he grabbed her, choked her, punched her ear, and banged her head against the toilet and bathroom counter. At some point during the assault, Lord bit Agarenzo's arms and legs. Lord also shoved a curling iron down Agarenzo's throat, which resulted in a severe injury to her hyperpharynx. The Athens–Clarke County detective met with an Oconee County

special victims investigator while at the hospital. They shared the information obtained from Agarenzo with each other and with their fellow officers. The Athens–Clarke County detective obtained a search warrant for Lord's car, and the Oconee County investigator obtained a search warrant for Lord's residence.

The affidavit supporting the Oconee County application for a search warrant of Lord's residence was based on the following information: the eyewitness report of a battery against Agarenzo in Clarke County, Lord's disheveled appearance when confronted in Oconee County, his denial that a domestic argument had occurred, the presence of a large quantity of blood in the car, Agarenzo's physical injuries, Agarenzo's statement that she had been assaulted in both Clarke County and Oconee County, Agarenzo's statement that Lord had shoved a curling iron down her throat, and the presence of blood splatter observed inside the house. The Oconee County investigator obtained the signed search warrant at 4:20 p.m. the day of the assault. That afternoon, a Georgia Bureau of Investigation (GBI) crime scene analyst arrived at Lord's residence to execute the search warrant. When he arrived, the officers were outside of Lord's home, not in it, waiting to begin the search. Pursuant to the search warrant, the GBI recovered evidence from Lord's kitchen, living room, master bedroom, and master bathroom, including numerous blood swabs, bloodied clothing and wash towels, a broken necklace, a broken candle holder, a broken belt buckle and a bloodied belt, a blood-stained bed sheet, and the bloodied curling iron. [Lord v. State, 297 Ga. App. 88, 88-91 (2009).]

## NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). After a careful review of the record, and in light of the statement of facts presented herein, no evidentiary hearing is warranted in this case.

LEGAL STANDARDS

In accordance with the provisions of the AEDPA, federal courts are prohibited from granting habeas relief with respect to any claim adjudicated on the merits in state court unless that decision either (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d); Wellons v. Warden, Georgia Diagnostic and Classification Prison, 695 F.3d 1202, 1206 (11th Cir. 2012). Not only is this standard "difficult to meet," Harrington v. Richter, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011), but it also is a "highly deferential standard for evaluating state-court rulings, … which demands that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002).

A state court's decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." Id. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id.

When a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Similarly, when reviewing a state court's decision applying federal law, a federal court must not

determine the accuracy of the result, but instead, whether the result was objectively unreasonable, which is "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). A state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

Construed in the light most favorable to him, Petitioner's federal habeas petition, as amended, contains the following grounds for relief:

> Ground One: Trial counsel rendered ineffective assistance by: (a) failing to file a general demurrer to counts one and two of the indictment; (b) failing to file a motion for directed verdict of acquittal to count two of the indictment; and (c) failing to object to testimony proffered by law enforcement officers and medical personnel about statements made to them by Petitioner's wife under circumstances that were not objectively indicative of an ongoing emergency.
>
> Ground Two: Appellate counsel rendered ineffective assistance by failing to raise the three errors set forth in Ground One (a), (b), and (c) on direct appeal to the Georgia Court of Appeals.
>
> Ground Three: Law enforcement officers searched and seized evidence from Petitioner's residence contrary to the Fourth, Fifth, and Fourteenth Amendments, and as a result, Petitioner was denied his due process and equal protection rights.
>
> Ground Four: Law enforcement officers searched and seized evidence from Petitioner's vehicle contrary to the Fourth, Fifth, and Fourteenth Amendments, and as a result, Petitioner was denied his due process and equal protection rights.
>
> Ground Five: The Georgia Court of Appeals disregarded the jury's verdict of not guilty as to count one of the indictment and misapplied the facts and evidence to support a finding that the trial court did not err in denying the motion to suppress and that the offenses did not merge contrary to the Fourth, Fifth, and Fourteenth Amendments, and as a result, Petitioner was denied his due process and equal protection rights. [Doc. 6 at 5-16.]

Because Grounds One through Five of the petition either fail to state a claim or are procedurally defaulted, Petitioner is not entitled to any relief.

**A.     Ground One**

In Ground One, Petitioner alleges that trial counsel rendered ineffective assistance by: (a) failing to file a general demurrer to counts one and two of the indictment; (b) failing to file a motion for directed verdict of acquittal to count two of the indictment; and (c) failing to object to testimony proffered by law enforcement officers and medical personnel about statements made to them by Petitioner's wife under circumstances that were not objectively indicative of an ongoing emergency. Petitioner did not raise Ground One (a) in his original or amended state habeas petitions, and as a result, Georgia state courts have not addressed this particular error. However, Petitioner did raise Ground One (b) and Ground One (c) in his amended state habeas petition. The state habeas court concluded that both Ground One (b) and Ground One (c) were procedurally defaulted under O.C.G.A. § 9–14–48(d), finding that any claims about trial counsel's alleged ineffectiveness could have been raised on direct appeal when Petitioner was represented by new appellate counsel and that Petitioner did not establish cause and prejudice to excuse his procedural default of Ground One (b) and Ground One (c).

The three errors identified by Petitioner in Ground One are procedurally defaulted. Ground One (a) is new but procedurally defaulted under Georgia's state procedural bar, O.C.G.A. § 9–14–51,[1] because any claim challenging trial counsel's alleged ineffectiveness for failing to file a general demurrer to counts one and two of the indictment could have been raised in Petitioner's original or amended state habeas petitions. Georgia's state procedural bar, O.C.G.A. § 9-14-51, restricts the filing of successive state habeas petitions. It provides that any

---

[1] O.C.G.A. § 9–14–51 provides as follows:
All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

8

grounds for relief not raised in the original or amended habeas petitions are deemed waived unless the Court "finds ground for relief asserted therein which could not reasonably have been raised in the original or amended petition." O.C.G.A. § 9-14-51. Additionally, although Petitioner raised Ground One (b) and Ground One (c) in his amended state habeas petition, the state habeas court "clearly and expressly" held that O.C.G.A. § 9–14–48(d)[2] barred Petitioner's claims. See e.g., Coleman v. Thompson, 501 U.S. 722, 729–735 (1991).

Where, as here, procedural default would bar subsequent efforts to litigate the three errors identified by Petitioner in Ground One in Georgia state courts, Petitioner may not obtain federal habeas relief absent a showing of cause and actual prejudice, Engle v. Isaac, 456 U.S. 107, 129 (1982), or a showing that a fundamental miscarriage of justice would occur if federal court did not consider the claim, Coleman, 501 U.S. at 735, n. 1. Petitioner has not established cause and prejudice for his procedural default of Ground One (a), Ground One (b), and Ground One (c). Likewise, there has been no showing that a fundamental miscarriage of justice would result if Ground One (a), Ground One (b), and Ground One (c) are not addressed on the merits in federal court. Accordingly, Petitioner is not entitled to any relief on Ground One.

**B.    Ground Two**

In Ground Two, Petitioner contends that appellate counsel rendered ineffective assistance by failing to raise the errors set forth in Ground One (a), Ground One (b), and Ground One (c) on direct appeal to the Georgia Court of Appeals. As to the error set forth in Ground One (a),

---

[2] O.C.G.A. § 9–14–48(d) provides as follows:
  The court shall review the trial record and transcript of proceedings and consider whether the petitioner made timely motion or objection or otherwise complied with Georgia procedural rules at trial and on appeal and whether, in the event the petitioner had new counsel subsequent to trial, the petitioner raised any claim of ineffective assistance of trial counsel on appeal; and absent a showing of cause for noncompliance with such requirement, and of actual prejudice, habeas corpus relief shall not be granted. In all cases habeas corpus relief shall be granted to avoid a miscarriage of justice. If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence challenged in the proceeding and such supplementary orders as to rearraignment, retrial, custody, or discharge as may be necessary and proper.

because Petitioner did not raise this error in his original or amended state habeas petitions, Georgia state courts have not addressed it. As to the errors set forth in Ground One (b) and Ground One (c), Petitioner raised essentially the same arguments in his amended state habeas petition. The state habeas court considered these arguments on the merits and concluded that Petitioner failed to establish that appellate counsel's performance was deficient or that any alleged deficiency prejudiced Petitioner on direct appeal.

Preliminarily, as to the error set forth in Ground One (a), Ground Two is new but procedurally defaulted under Georgia's state procedural bar, O.C.G.A. § 9–14–51, because any claim challenging appellate counsel's alleged ineffectiveness for failing to raise a claim about trial counsel having been ineffective for not filing a general demurrer to counts one and two of the indictment on direct appeal could have been raised in Petitioner's original or amended state habeas petitions. As previously discussed, Georgia's state procedural bar provides that any grounds for relief not raised in the original or amended habeas petitions are deemed waived unless the Court "finds ground for relief asserted therein which could not reasonably have been raised in the original or amended petition." O.C.G.A. § 9-14-51. Because procedural default would bar any effort to litigate this aspect of Ground Two in Georgia state courts, Petitioner may not obtain federal habeas relief absent a showing of cause and actual prejudice, Engle, 456 U.S. at 129, or a showing that a fundamental miscarriage of justice would occur if federal court did not consider the claim, Coleman, 501 U.S. at 735, n. 1. Here, Petitioner has not established cause and prejudice for his procedural default of Ground Two as it relates to the error set forth in Ground One (a). There also has been no showing that a fundamental miscarriage of justice would result if this aspect of Ground Two is not addressed on the merits in federal court. Accordingly, Petitioner is not entitled to any relief on Ground Two as it relates to the error in Ground One (a).

Petitioner also is not entitled to any relief on Ground Two as it relates to the errors set forth in Ground One (b) and Ground One (c). The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, "a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003), citing Strickland, 466 U.S. at 687. To establish deficient performance, "Petitioner must show counsel's performance 'fell below an objective standard of reasonableness.'" Cook v. Warden, Georgia Diagnostic Prison, 677 F.3d 1133, 1136 (11th Cir. 2012), quoting Strickland, 466 U.S. at 688. To establish prejudice, "Petitioner must show that a 'reasonable probability' exists that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Cook, 677 F.3d at 1136, quoting Strickland, 466 U.S. at 697. Petitioner must establish both prongs of Strickland in order to show that counsel rendered ineffective assistance. Morton v. Secretary, Florida Department of Corrections, 684 F.3d 1157, 1166 (11th Cir. 2012).

Despite Petitioner's cursory allegations, the record establishes that the state habeas court properly applied Strickland and correctly rejected Petitioner's claims of ineffective assistance of appellate counsel. That is, after considering the underlying record and appellate counsel's testimony, the state habeas court concluded that Petitioner failed to show that appellate counsel's performance was deficient or that Petitioner was prejudiced by appellate counsel's performance. Petitioner fails to establish that the state habeas court's decision that appellate counsel provided effective assistance was "contrary to" or "an unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). Additionally, Petitioner does not establish that the state habeas court's decision was "based on an unreasonable determination of the facts in light of the

11

evidence presented" at the state proceeding. 28 U.S.C. § 2254(d)(2). Petitioner also offers no additional evidence, let alone "clear and convincing evidence," to contradict any of the state habeas court's factual determinations. 28 U.S.C. § 2254(e)(1). After carefully reviewing the record, there is no basis to conclude that the state habeas court's decision that appellate counsel rendered effective assistance ran afoul of either 28 U.S.C. § 2254(d)(1) or 28 U.S.C. § 2254(d)(2). Consequently, Petitioner also is not entitled to any relief on Ground Two as it relates to the errors in Ground One (b) and Ground One (c).

**C.    Grounds Three and Four**

In Ground Three, Petitioner alleges that law enforcement officers searched and seized evidence from his residence contrary to the Fourth, Fifth, and Fourteenth Amendments as a result of which Petitioner was denied his due process and equal protection rights. Similarly, in Ground Four, Petitioner contends that law enforcement officers searched and seized evidence from his vehicle contrary to the Fourth, Fifth, and Fourteenth Amendments as a result of which Petitioner was denied his due process and equal protection rights. Petitioner did not raise any claims about the search and seizure of evidence from his residence and vehicle under the Fifth and Fourteenth Amendments either on direct appeal or in his state habeas proceeding, and as a result, Georgia state courts have not addressed these particular claims. However, Petitioner challenged the trial court's denial of his motion to suppress the evidence seized from his residence and vehicle under the Fourth Amendment on direct appeal. The Georgia Court of Appeals held that the trial court correctly denied his motion to suppress the evidence seized from his residence and vehicle.

Any claim in Grounds Three and Four about the search and seizure of evidence from Petitioner's residence and vehicle under the Fifth and Fourteenth Amendments is new but procedurally defaulted under Georgia's state procedural bar, O.C.G.A. § 9–14–51, because any

12

such claim could have been raised in Petitioner's original or amended state habeas petitions. Because procedural default would bar any subsequent effort to litigate these aspects of Grounds Three and Four in Georgia state courts, Petitioner may not obtain federal habeas corpus relief absent a showing of cause and actual prejudice, Engle, 456 U.S. at 129, or a showing that a fundamental miscarriage of justice would occur if federal court did not consider the claim, Coleman, 501 U.S. at 735, n. 1. Here, Petitioner has not established cause and prejudice for his procedural default of these aspects of Grounds Three and Four. There also has been no showing that a fundamental miscarriage of justice would result if these aspects of Grounds Three and Four are not addressed on the merits in federal court. Accordingly, Petitioner is not entitled to relief regarding any claim in Grounds Three and Four about the search and seizure of evidence from Petitioner's residence and vehicle under the Fifth and Fourteenth Amendments.

Petitioner also is not entitled to any relief regarding any claim in Grounds Three and Four about the search and seizure of evidence from Petitioner's residence and vehicle under the Fourth Amendment. In Stone v. Powell, the Supreme Court held that a state prisoner may not obtain federal habeas relief on a Fourth Amendment claim if he has had a full and fair opportunity to litigate the claim in state court. 428 U.S. 465, 494 (1976). In this case, the record establishes that Petitioner had ample opportunity to litigate all of his Fourth Amendment claims about the search and seizure of evidence from his residence and vehicle both at trial and on direct appeal and that Georgia state courts fully and fairly considered the various Fourth Amendment claims raised by Petitioner. Where, as here, Petitioner had a full and fair opportunity to litigate all of his Fourth Amendment claims about the search and seizure of evidence from his residence and vehicle before Georgia state courts, Petitioner "may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his

trial." Id. see also Mason v. Allen, 605 F.3d 1114, 1120-1121 (11th Cir. 2010) (holding that Stone precluded further consideration of Fourth Amendment claims in federal habeas proceeding where those claims received full and fair consideration in state court). Consequently, Petitioner also is not entitled to relief regarding any Fourth Amendment claim in Grounds Three and Four about the search and seizure of evidence from Petitioner's residence and vehicle.

**D.      Ground Five**

In Ground Five, Petitioner alleges that the Georgia Court of Appeals disregarded the jury's verdict of not guilty as to count one of the indictment and misapplied the facts and evidence to support a finding that the trial court did not err in denying the motion to suppress and that the offenses did not merge contrary to the Fourth, Fifth, and Fourteenth Amendments as a result of which Petitioner was denied his due process and equal protection rights. After the Georgia Court of Appeals affirmed Petitioner's convictions on direct appeal, Petitioner did not file a motion for reconsideration or a notice of intent to apply for certiorari with the Georgia Supreme Court. Although Petitioner pursued his claims concerning the motion to suppress and the merger of his two convictions for aggravated assault on direct appeal, Petitioner did not pursue any specific claim involving the Fifth and Fourteenth Amendments. As a result, Georgia state courts have not addressed any specific claims about the motion to suppress or the merger of his convictions under the Fifth and Fourteenth Amendments.

Any claim in Ground Five about the search and seizure of evidence from Petitioner's residence and vehicle or about the merger of Petitioner's two convictions for aggravated assault under the Fifth and Fourteenth Amendments is new but procedurally defaulted under Georgia's state procedural bar, O.C.G.A. § 9–14–51, because any such claim could have been raised in Petitioner's original or amended state habeas petitions. Because procedural default would bar

14

subsequent efforts to litigate these aspects of Ground Five in Georgia state courts, Petitioner may not obtain federal habeas relief absent a showing of cause and actual prejudice, Engle, 456 U.S. at 129, or a showing that a fundamental miscarriage of justice would occur if federal court did not consider the claim, Coleman, 501 U.S. at 735, n. 1. Here, Petitioner has not established cause and prejudice for his procedural default of these aspects of Ground Five. There also has been no showing that a fundamental miscarriage of justice would result if these aspects of Ground Five are not addressed on the merits in federal court. Accordingly, Petitioner is not entitled to relief regarding any claim in Ground Five about the search and seizure of evidence from Petitioner's residence and vehicle or about the merger of Petitioner's two convictions for aggravated assault under the Fifth and Fourteenth Amendments.

In addition, Petitioner is not entitled to any relief regarding any claim in Ground Five about the search and seizure of evidence from Petitioner's residence and vehicle or about the merger of Petitioner's two convictions for aggravated assault under the Fourth Amendment. As previously noted, in Stone v. Powell, the Supreme Court held that a state prisoner may not obtain federal habeas relief on a Fourth Amendment claim if he has had a full and fair opportunity to litigate the claim in state court. 428 U.S. 465, 494 (1976). The record here establishes that Petitioner had ample opportunity to litigate all of his Fourth Amendment claims both at trial and on direct appeal and that Georgia state courts fully and fairly considered the various Fourth Amendment claims raised by Petitioner. Because Petitioner had a full and fair opportunity to litigate all of his Fourth Amendment claims before Georgia state courts, Petitioner "may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. see also Mason, 605 F.3d at 1120-1121 (holding that Stone precluded further consideration of Fourth Amendment claims in federal habeas

proceeding where those claims received full and fair consideration in state court). Consequently, Petitioner also is not entitled to relief regarding any Fourth Amendment claim in Ground Five.

CONCLUSION

Because Grounds One, Two, Three, Four, and Five either fail to state a cognizable claim or are procedurally defaulted, it is hereby **RECOMMENDED** that the instant petition be **DENIED**. Pursuant to the requirements of Rule 11(b) of the Rules Governing Section 2254 Cases, it does not appear that Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-484 (2000) (explaining how to satisfy this showing) (citation omitted). Accordingly, it is **FURTHER RECOMMENDED** that the Court **DENY** a certificate of appealability in its final Order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned **within fourteen (14) days** after being served with a copy thereof.

**SO RECOMMENDED**, this 16th day of April, 2014.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge